
FILED
April 16, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002566338

Thomas A. Aceituno
PO Box 189
Folsom, CA 95763-0189
Telephone: (916) 985-6486
e-mail: trustee@acetrustee.com

Bankruptcy Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In Re,

JAMES ANDREW NICOLAI,

DAWN MICHELLE NICOLAI,

Debtor(s)

Case No. 09-30677-C-7

DCN: TAA-1
DATE: May 11, 2010
TIME: 9:30 AM
DEPT.: C

MOTION TO APPROVE AGREEMENT RELATING TO SALE OF ASSETS

and

DECLARATION OF THOMAS A. ACEITUNO

I, THOMAS A. ACEITUNO, the duly appointed trustee in the above entitled matter, hereby move for an order approving an agreement with the Debtors to complete the sale of assets of a wholly owned corporation, dissolve that corporation, and recover the balance for the benefit of the estate as follows:

1. The Debtors herein filed bankruptcy on May 27, 2009. I have been appointed Trustee for the bankruptcy estate.

2. On their Schedule B, the Debtors reported owning 100% of the stock of Premiere Commercial Insurance (hereafter "Premiere"). Premiere is a California Sub S

corporation used by the Debtors to conduct services as an insurance brokerage. The schedules indicated the corporation's liabilities exceeded its assets, that the corporation was to be dissolved, and that the corporation had no value to the Debtors. No claim of exemption has been made on the value of the corporation.

3. Subsequent to the initial creditor meeting held on July 13, 2009, I learned that the Debtors had in fact arranged the sale of the assets of Premiere to a third party (Builders Advantage Insurance Service, Inc.) prior to the filing of the bankruptcy. The assets sold consist of the "book of business" of the corporation together with certain personal property. The proposed sales price is based upon payment of 50% of the gross revenue generated from insurance renewal premiums for the period May 1, 2009 through April 30, 2011, plus $850 cash for the personal property.

4. Although the sale was negotiated prior to the filing of the bankruptcy, Co-Debtor Dawn Nicolai had signed the sale agreement, but Debtor James Nicolai had not. The Debtors are separated and were unable to complete the sale prior to the filing of the bankruptcy.

5. If concluded, the sale is estimated to generate $50-200,000 over the two year period. Approximately $40,000 is already due and payable and is being held by the Buyer, who is willing to turn over the funds to the appropriate party.

6. Based on additional information obtained after the creditor meeting, I believe the sale will in fact generate sufficient funds to pay all outstanding liabilities of the corporation and a substantial surplus remaining. Upon dissolution of the corporation, that surplus would be considered an asset of this bankruptcy estate.

7. Due to the marital separation, the Debtors would prefer that an independent party complete the sale, collect the proceeds, payoff corporate debt, and dissolve the corporation. The Bankruptcy Estate has an interest in ensuring that this is completed so that any surplus to be distributed upon dissolution of the corporation be returned to the Estate.

8. I have reached an agreement with the Debtors which will allow for the completion of the sale, orderly collection of the proceeds, and ultimate dissolution of the corporation. A copy of the Agreement Relating to Sale of Assets (hereafter the "Agreement") is filed herein as Exhibit A.

9. The Agreement provides that the sale will be concluded by the Trustee, who will collect the sale proceeds. Those proceeds will be used to (a) pay administrative expenses (including filing of tax returns as necessary), (b) pay all obligations of the corporation and (c) pay to dissolve the corporation. The balance will be delivered to the estate for further distribution under the Bankruptcy Code.

10. Although the agreement provides for sale of assets, this is a sale of assets of the underlying corporation, rather than assets of the Estate. This agreement and the underlying sale is a "hybrid" of a sale under Bankruptcy Code Section 363 and an "operation" of a corporation under Bankruptcy Code Section 721. Therefore, I am seeking an order allowing both a sale under Section 363 and limited operation under Section 721. I am requesting that the court grant a sale and operating order under Sections 363 and 721 as follows:

a. The Trustee is authorized to execute all documents necessary to complete the sale of assets of Premiere Commercial Insurance to Builders Advantage Insurance Service, Inc. under the terms expressed in the Agreement.
   b. The Trustee is authorized to operate the business of Premiere for the purposes set forth in the Agreement until April 1, 2011;
   c. The expenses of collecting the sale proceeds, preparing and filing taxes, and costs associated with dissolving the corporation shall all be deemed operating expenses of the corporation. Professionals employed for these purposes shall be employed and their compensation paid only upon approval of this court;
   d. The Trustee shall report all receipts and disbursements on a quarterly basis by the filing of a "Form 2 Cash Receipts and Disbursements Record", which shall be served upon the Debtors, their counsel, the Office of the US Trustee and any creditors filing a request for special notice;
   e. The receipts collected pursuant to the Agreement represent gross sale proceeds for a corporation which is wholly owned by the Debtors and shall be considered and treated as receipts of the estate.
11. The Agreement represents an opportunity for the estate to recover substantial value for the benefit of its creditors. Therefore, I believe the Agreement is in the best interests of the estate.

For the reasons above, I pray for an order of the court as outlined above.

Respectfully submitted:

DATE: April 16, 2010                                    /s/ Thomas A. Aceituno

DECLARATION OF THOMAS A. ACEITUNO

I, Thomas A. Aceituno, hereby declare under penalty of perjury:

1. I am the Trustee in this case.

2. I have reviewed all of the foregoing and it is true and correct and if called I would so testify.

DATE: April 16, 2010                                    /s/ Thomas A. Aceituno

Page 5